IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RAUL MARTINEZ GAMEZ,<br><br>　　　　　　　　Petitioner,<br><br>　　vs.<br><br>DAVID EASTERWOOD, Acting Field Office<br>Director of Enforcement and Removal<br>Operations, St. Paul Field Office,<br>Immigration and Customs Enforcement;<br>KRISTI NOEM, in her official capacity as<br>Secretary of the U.S. Department of<br>Homeland Security; TODD LYONS, in their<br>official capacity as acting director of U.S.<br>Immigration and Customs Enforcement;<br>PAM BONDI, in her official capacity as<br>Attorney General of the United States; and<br>ROB JEFFREYS, in his official capacity as<br>Director of the Nebraska Department of<br>Correctional Services;<br><br>　　　　　　　　Respondents. | **4:26CV3009**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Raul Martinez Gamez's Petition for Writ of Habeas Corpus. Filing No. 1. He argues he is being unlawfully detained because he was previously paroled into the country, he has filed for asylum, and he has been detained without being afforded a bond hearing before an immigration judge. Respondents argue Martinez Gamez is subject to mandatory detention as arriving alien seeking admission. For the reasons set forth herein, the Court grants the Petition and orders Martinez Gamez immediately released.

## I.　　BACKGROUND

Petitioner, Raul Martinez Gamez, is a native and citizen of Nicaragua where he participated in political and religious protests. Filing No. 1 at 5. He presented himself to

1

United States border officials on November 16, 2022. *Id.* On November 17, 2022, after inspection by such officers, he was paroled into the United States. Filing No. 1-1 at 4. His parole document indicates it is granted pursuant to INA § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5), and is valid until "01/15/2023." *Id.* However, even after the supposed expiration of his parole, Martinez Gamez continued to have scheduled "check-ins" with ICE, including on August 27, 2024. Filing No. 1-2 at 2. An additional document dated November 18, 2022, indicates Martinez Gamez was being released on the "alternative to detention" ("ATD") program which subjected him to potential electronic monitoring and curfew. *Id.* The document notes that "[f]ailure to comply with the requirements of the ATD program will result in a redetermination of you [sic] release conditions or your arrest and detention." *Id.* at 1.

Martinez Gamez appeared for his regularly scheduled ICE check-in on August 25, 2025, and was told to return for a check-in in one year, on August 25, 2026. Filing No. 1 at 6. However, on December 15, 2025, Martinez Gamez was detained by ICE and denied a bond. *Id.* ICE did not provide a reason for the timing of detaining Martinez Gamez prior to his next scheduled check-in. *Id.* DHS's Notice to Appear ("NTA") to Martinez Gamez charges him as being removable under INA 212(a)(6)(A), codified at 8 U.S.C. § 1182(a)(6)(A), which defines as inadmissible "[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General." Filing No. 18-1 at 1. DHS issued an administrative warrant for Martinez Gamez's arrest based on the Notice to Appear. Filing No. 18-2 at 1.

The Department of Homeland Security determined petitioner is in removal proceedings pursuant to 8 U.S.C. § 1225(b)(2)(A), which requires mandatory detention, thereby rendering Martinez Gamez ineligible for bond. Martinez Gamez now seeks a writ of habeas corpus declaring he is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and ordering the government to release him or provide him with a bond hearing.

## II.    STANDARD OF REVIEW

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## III.    ANALYSIS

Martinez Gamez argues he is unlawfully detained because his detention violates the text of the INA and its implementing regulations and violates his Due Process rights. He points to the fact he was previously paroled and released on ATD conditions and the fact DHS did not justify his re-arrest. Respondents believe Martinez Gamez is properly mandatorily detained as an arriving alien seeking admission under 8 U.S.C. § 1225. They further argue his previous parole is immaterial because it terminated prior to his arrest.

### A. Statutory Framework

Respondents argue 8 U.S.C. § 1225, entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing" applies to Martinez

3

Gamez's situation.  Under § 1225(b)(2), "in the case of an alien who is an *applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2) (emphasis added).  For purposes of this provision, "an alien who is an applicant for admission" is defined as an "alien present in the United States who has not been admitted or who arrives in the United States."  8 U.S.C. § 1225(a)(1).  The terms "admission" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.  8 U.S.C. § 1101(a)(13).

By contrast, Martinez Gamez argues he falls under 8 U.S.C. § 1226, entitled "Apprehension and detention of aliens."  That statute provides that "an alien" arrested on a warrant issued by the Attorney General "may" be detained but is also eligible for release on bond.  8 U.S.C § 1226(a).  Congress recently amended subsection c of this statute in the Laken Riley Act.  In contrast to the otherwise discretionary detention of noncitizens under § 1226(a), § 1226(c) as amended requires mandatory detention for certain categories of noncitizens, including those who have been charged or convicted or certain crimes like burglary, shoplifting, or assault of a law enforcement officer.  *See* 8 U.S.C. § 1226(c)(1).

To summarize, if a noncitizen is detained under § 1225(b)(2)(A), he or she must remain in custody during removal proceedings, but if a noncitizen is detained under § 1226, he or she is entitled to a bond determination hearing before an immigration judge.

**B.  Statutory Interpretation**

In interpreting the meaning of a statute, the Court begins with the text itself.  *Union Pac. R.R. Co. v. United States*, 865 F.3d 1045, 1048 (8th Cir. 2017).  But "[t]he definition of words in isolation, however, is not necessarily controlling in statutory construction.  A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006).  "When interpreting a statute, [the court] must also consider the statutory context in which the words in question appear . . . including both the specific context in which th[e] language is used, and the broader context of the statute as a whole."  *Designworks Homes, Inc. v. Columbia House of Brokers Realty, Inc.*, 9 F.4th 803, 807 (8th Cir. 2021), *aff'd*, 126 F.4th 589 (8th Cir. 2025) (internal citations and quotation marks omitted).

Respondents contend Martinez Gamez is an "applicant for admission" pursuant to § 1225(b)(2)(A) such that his detention is mandatory.  But this interpretation does not comport with the plain meaning of the statutes or the words in their broader statutory context.   First, while Martinez Gamez may fairly be described as an "applicant for admission" as Respondents argue, such a focus omits the latter half of § 1225(b)(2)(A) which refers to "an alien seeking admission."  Reading § 1225 as Respondents do by focusing solely on the phrase "applicant for admission" would render the phrase "alien seeking admission" superfluous, violating a cardinal rule of statutory construction.  *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should have meaning." (internal quotation marks omitted)).

Second, courts have long interpreted the phrase "alien seeking admission" in § 1225 as applying to noncitizens seeking entry into the country and § 1226 as applying to

5

those "already in the country." *See Jennings v. Rodriguez*, 583 U.S. 281, 281 (2018) ("In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)"). The Court sees no reason to depart from this longstanding and reasoned interpretation of the statutory scheme.

Third, the recent amendments to § 1226(c) via the Laken Riley Act likewise support this interpretation. The Laken Riley Act added new categories of noncitizens who must be mandatorily detained under § 1226(c). *See* 8 U.S.C. § 1226(c). Were Respondents' reading of the statutes correct, the Laken Riley Act amendments would be redundant because any noncitizen who entered without inspection would already be subject to mandatory detention under § 1225(a)(2)(A) as an applicant for admission. "[W]hen Congress acts to amend a statute, [the Court] presume[s] it intends its amendment to have real and substantial effect." *Pierce Cnty., Wash. v. Guillen*, 537 U.S. 129, 145 (2003). Respondents' proposed "interpretation, which would largely nullify a statute Congress enacted [just last] year, must be rejected." *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *7 (D. Mass. July 7, 2025).

Until recently, longstanding agency practice also treated noncitizens who entered without inspection and were apprehended within the United States as subject to § 1226(a) rather than § 1225(b)(2)(A). However, in September 2025, the Board of Immigration Appeals issued a precedential decision interpreting § 1225 as applying to any noncitizen "present in the United States" who has not been inspected. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). This BIA opinion is not binding on the Court. *See Loper*

6

*Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) (overruling *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984) which required deference to agency interpretation of statutes). The Court also does not find it persuasive given the statutory interpretation analysis above. The majority of courts to address the question have disagreed with the BIA's interpretation and have instead determined that noncitizens already present in the country are not "seeking admission" within the meaning of § 1226(b)(2)(A) and are thus not subject to mandatory detention. *See, e.g.*, *Castanon-Nava v. U.S. Dep't of Homeland Sec.*, No. 25-3050, 2025 WL 3552514, at *10 (7th Cir. Dec. 11, 2025) *Ambrocio v. Noem*, No. 4:25CV3226, 2025 WL 3295530 (D. Neb. Nov. 25, 2025); *Alvarez v. Lyons*, No. 8:25-CV-672, 2025 WL 3564733 (D. Neb. Dec. 12, 2025); *Barrajas v. Noem*, No. 4:25-CV-00322-SHL-HCA, 2025 WL 2717650, at *5 (S.D. Iowa Sept. 23, 2025); *Avila v. Bondi*, No. CV 25-3741 (JRT/SGE), 2025 WL 2976539, at *7 (D. Minn. Oct. 21, 2025); *Hasan v. Crawford*, No. 1:25-CV-1408 (LMB/IDD), 2025 WL 2682255, at *9 (E.D. Va. Sept. 19, 2025); *Barco Mercado v. Francis*, No. 25-CV-6582 (LAK), 2025 WL 3295903, at *4 n.22 (S.D.N.Y. Nov. 26, 2025) (collecting cases).

Here, Martinez Gamez was not apprehended while "seeking admission" to the country; he was detained inside the country after having been paroled into the country and having resided here for approximately three years. Thus, § 1225 is inapplicable to him and § 1226 is the proper statute under which the government can seek to detain and remove him. Under that statute, he is not subject to mandatory detention and must be afforded a bond determination hearing before an impartial immigration judge

**C. Parole**

Nothing about the fact Martinez Gamez was paroled into the United States upon his initial arrival changes the above determination that he is not subject to mandatory detention.

Martinez Gamez was paroled into the country pursuant to INA § 212(d)(5), codified at 8 U.S.C. § 1182(d)(5), and his parole document indicates it was valid until "01/15/2023," a little more than 14 months after it was issued. Filing No. 1-1 at 4. Section 1182(d)(5) provides

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

Respondents argue that because Martinez Gamez's parole terminated on January 15, 2023, he was a mere applicant for admission and subject mandatory detention by the time of his arrest in December 2025. But this argument ignores additional facts of the case. First, although the only parole document in the record indicates it was to expire January 2023, the applicable regulations states that renewal of parole is the automatic, default option, absent additional findings by the Department. *See Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *11 (E.D.N.Y. Nov. 28, 2025) ("[W]hen a noncitizen's parole is terminated automatically by the 'expiration of the time for which parole was authorized,' if the 'exclusion, deportation, or removal order cannot

be executed within a reasonable time, the alien shall again be released on parole unless . . . public interest requires that the alien be continued in custody.'" (quoting 8 C.F.R. § 212.5(e)(1)–(2))).  There is no evidence in the record that the United States made any determination regarding whether removing Martinez Gamez was feasible or whether public interest had changed such to require him to be detained at the time his initial parole expired.  Thus, the presumption pursuant to the Department's own regulations would be that Martinez Gamez continued on parole.

The record also reflects that Martinez Gamez had at least two scheduled check-ins with ICE following the supposed expiration of his parole, one in August 2024 and one in August 2025, with a third scheduled for August 2026.  This would suggest that DHS was aware of Martinez Gamez's continued presence in the country and had exercised its discretion to permit him to continue residing here under its supervision, whether under parole or some other status or mechanism.

But even if the government's argument were correct and Martinez Gamez's parole expired in 2023, that would still not subject him to mandatory detention under § 1225.  He was not arrested until nearly two years later and was at that point plainly not an arriving alien seeking admission.  The government seems to have already conceded this point by obtaining an administrative warrant for his arrest, the proper procedure under § 1226. Accordingly, regardless of his initial entry on parole and the subsequent ICE check-ins or the semantics of how you classify his status or lack thereof, the fact remains that Martinez Gamez was not apprehended in 2025 while seeking admission to the country and is not subject to mandatory detention under § 1225.

**D.  Remedy**

Martinez Gamez seeks either his immediate release or a bond determination hearing.

While Martinez Gamez was arrested pursuant to an administrative warrant, the validity of this warrant and the Notice to Appear upon which it is based are problematic to the Court. The NTA charges Martinez Gamez as being subject to removal for violating INA § "212(a)(6)(A)(i) . . . in that you are an alien present in the United States without being admitted *or paroled*, or who arrive in the United States at any time or place other than as designated by the Attorney General." Filing No. 18-1 at 1 (emphasis added); *see also* 8 U.S.C. § 1182(a)(2)(6)(A)(i). But, Martinez Gamez *was* paroled into the United States. *See* Filing No. 1-1 at 4.

Thus, there does not appear to be a lawful basis for Martinez Gamez's arrest and detention pursuant to the operative NTA and administrative warrant. The correct remedy is therefore his immediate release. Should Respondents believe there is a valid basis to charge Martinez Gamez with removability, they may file a new NTA and issue a new warrant for his arrest. Respondents should note that, pursuant to this Order, they may only re-detain Martinez Gamez under 8 U.S.C. § 1226, meaning he must be afforded a prompt bond hearing pursuant to 8 U.S.C. § 1226(a). The Court will retain jurisdiction to enforce this order subsequent to Petitioner's release.

## IV.     CONCLUSION

For the foregoing reasons, the Court determines Martinez Gamez is being unlawfully detained and must be released.[1] Accordingly, the Court grants his petition for writ of habeas corpus.

---

[1] A petitioner seeking release from immigration detention shall be awarded costs and reasonable attorney's fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), unless the Court finds that

IT IS ORDERED:

1.  Petitioner's Petition for Writ of Habeas Corpus, Filing No. 1, is granted as set forth herein.

2.  Respondents shall release Petitioner immediately after out-processing him. Petitioner may only be re-detained upon a warrant issued by the Attorney General under 8 U.S.C. § 1226(a) and a valid Notice to Appear.  Should Petitioner be re-detained, Respondents must thereafter promptly provide him with a bond hearing before a neutral immigration judge pursuant to 8 U.S.C. § 1226(a).

3.  On or before February 13, 2026, Respondents shall file a status update regarding Petitioner's release.

4.  The hearing set for February 6, 2026, is hereby canceled.

5.  The Court will enter a separate judgment.

Dated this 4th day of February, 2026.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

---

the government's position was substantially justified or that special circumstances make an award unjust. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483 (3d Cir. Feb. 2, 2026); *see also*, *e.g.*, *Yeferson G.C. v. Easterwood*, No. 25-CV-4814, 2026 WL 207266, at *3 (D. Minn. Jan. 21), *report and recommendation adopted*, 2026 WL 209825 (D. Minn. Jan. 27, 2026); *cf. Bah v. Cangemi*, 548 F.3d 680 (8th Cir. 2008) (evaluating the merits of immigration habeas petitioner's EAJA claim).  **Any motion for costs and fees pursuant to the EAJA in this case should be filed within 30 days of the entry of judgment.**  *See* 28 U.S.C. § 2412(d)(1)(B).